CENTRAL TRUST CO. OF NEW YORK v. ST. LOUIS, A. & T. RY. CO. IN TEXAS, (ST. LOUIS SOUTHWESTERN RY. CO. IN TEXAS, Intervener.)

(Circuit Court, E. D. Texas. February 24, 1893.)

Nos. 132 and 133.

FEDERAL COURTS — RECEIVERSHIPS — FORECLOSURE SALE — ENJOINING STATE COURTS.

A federal court which decrees that railroad property shall be sold on foreclosure, subject only to such claims against the receiver as shall be held valid by that court on interventions to be filed before a given date, has authority, on a subsequent intervention of the purchaser, to enforce these terms by enjoining the prosecution against him in the state courts of damage claims arising during the receivership; and it will exercise this power when it appears that the purchaser will be subjected to a multiplicity of suits, subject to the same defenses.

In Equity. Petition of intervention by the St. Louis Southwestern Railway Company in Texas in the consolidated foreclosure suits brought by the Central Trust Company of New York against the St. Louis, Arkansas & Texas Railway Company in Texas. Decree for injunction.

Finley, Marsh & Butler, F. C. Dillard, and Sam. H. West, for intervener.

McCORMICK, Circuit Judge. The intervener holds, as purchaser at a foreclosure sale made under a decree of the United States circuit court in these consolidated cases, certain railroad property, which, pending the foreclosure proceedings, was in the custody and under the management of said court, through its receivers, duly appointed, qualified, and acting. On May 11, 1891, the property was ordered by said court to be surrendered to said purchaser, or to the purchasing trustee, subject to undisputed claims against the receivers, and to such disputed claims as had been or should be adjudged valid by said court; on interventions pending, or to be filed, prior to the 1st day of December, 1891, in the United States circuit court for the northern district of Texas, at Waco, or in the United States circuit court for the eastern district of Texas, at Tyler, in both of which courts the foreclosure proceedings were pending. This intervention shows that the defendant in said intervention, William Kitchens, has sued the intervener in another court (a state court) for damages claimed to have been done his property by the operation of the railroad property while it was under the management of said receivers; that there are very many similar claims set up and held by divers persons in the state of Texas, through which its line of railway is constructed, and intervener fears it will be subjected to innumerable suits, similar to that of the said defendant, William Kitchens, and to incalculable litigation and expense, unless it can be protected by process of injunction from the court in which said foreclosure proceedings were had. At Dallas, Tex., on November 16, 1892, I granted a restraining order, and an order requiring the defendant, after notice, to show cause at New Orleans, on December 15, 1892, before one of the circuit judges of this circuit, why he should not be enjoined and restrained from prosecuting against the intervener any proceedings to enforce against it any claim arising against said receivers, except by application to the court in this suit. After due notice to the defendant, the motion for injunction came on for hearing before me at New Orleans on December 15, 1892, and was argued by counsel for the intervener, no one appearing for the defendant. The matter has been held under advisement until now, partly because somewhat kindred questions were involved in an appeal pending before the circuit court of appeals for this circuit, and partly because there are other questions involved in this intervention of recognized difficulty, on which we have not been furnished or been able to find satisfactory authority. The authorities are satisfactory to the effect that the purchaser of such property at a foreclosure sale becomes a party to the foreclosure suit, without regard to his citizenship, so far as it is necessary to enforce against him liabilities growing out of his purchase, and to secure to him the property purchased on the terms of the sale; and the United States courts, having jurisdiction of the matter, can enforce its jurisdiction by injunction, when necessary, and section 720 of the United States Revised Statutes does not apply. Railway Co. v. Kuteman, 54 Fed. 547,[1]

[1] 4 C. C. A. 503.

(just decided by the circuit court of appeals for the fifth circuit,) and cases therein cited.    I am of opinion that, in ordering the sale to be made subject to certain charges, the court did not exceed its jurisdiction in limiting the charges to such as were undisputed, or had been or should be adjudged valid by the said United States circuit courts at Waco and Tyler, in which, as before said, the foreclosure proceedings had been conducted, and were and are still pending; and I do not doubt the intervener's right to hold the property so purchased by it free from any claims arising against the receivers, and not embraced in the terms of the reservation made in the decree ordering the delivery of the property to the purchaser.

However clear all of the foregoing may be, whether in such a case the court can and should apply the extraordinary remedy of injunction, as here asked by the purchaser, presents a question on which I have been able to obtain little aid from precedents, and on which cogent reasons both for and against may be given.    It seems to me, however, that a fair preponderance of reason is in favor of granting the relief here sought.    The very bulk of such property, and its peculiar character, the chief element of value in it being the vital breath of economic and skillful operation, calling for such various skill in mechanics and in finance, and the constant outlay of such amounts of capital, as few command, render it difficult to realize adequately on a judicial sale of such property under the most favorable conditions.    Pending the necessary proceedings preparatory to such a sale, it has generally, if not uniformly, been found necessary, in order to preserve such property and meet its obligations to the public, that it should be operated by, or under direction of, the court, through receivers.    From the very nature of the case, the accounts of the receivers and the claims against them, as such, cannot be all settled until after the surrender of the property and of its operation to the purchaser.    It is therefore judicious, if not necessary, that some reservation should be made in the sale of liability for such unsettled claims as could not be accurately stated in amount, or so safely approximated as to require or justify exacting a cash deposit to cover them.    Before the sale, certainly, claims arising out of the receiver's management could not be enforced against the property, except through the court, under whose orders he was holding and operating it.    Why, then, may not, and why should not, the court have the same continuing and exclusive control of the settlement of all such claims as well after as before the sale? And if it is necessary or judicious to make the reservation of liability in the sale, as above mentioned, is it not incumbent, just, and necessary, that correct procedure may be observed, the dignity of the court respected, and its contract with the purchaser fulfilled, to exert so much of the power of the court as may be required to maintain the limits of that reservation as fixed by the court in its decrees affecting the sale?    The fact that, pending the operation of the property by receivers, parties setting up claims against the receivers may sue without leave of the court, does not affect the question; for the judgment in such cases, if against the receivers, could not be executed on the property, except through the court that

commissioned and controlled the receiver. In this connection, it it to be observed that the defendant, William Kitchens, has not been restrained, and is not to be enjoined, from prosecuting his suit against the receivers. If it appeared that the defendant in this intervention was the only claimant who had joined, or who was likely to join, the intervener in such a suit against the receivers, or if it was not made affirmatively to appear that he was only one of many who would thus assail it, this court might, without injustice and with propriety, withhold its grace, and leave the intervener to its defenses, which must appear good to receive such grace, and, if good, could be as well maintained in the suit sought to be enjoined as in this court.

Leaving out of view any question of the propriety of regular and correct proceeding, respect for the court's dignity, and the obligation of its contract with the purchaser, the fact that the intervener has a good defense, and can avail of it in the court where the suit is brought against him, or in the courts of last resort, which he may reach by appeal or writ of error, will not deprive this court of the power or relieve it from the duty of protecting the intervener from the oppression of a multiplicity of suits, subject to the same defenses.

For the reasons barely indicated by the foregoing brief suggestions, I feel constrained to order the injunction restraining said William Kitchens from prosecuting his said suit against the intervener.