### SHEPHERD v. ST. LOUIS PUBLIC SERVICE CO.

No. 9503.

Circuit Court of Appeals, Eighth Circuit.

March 21, 1933.

Thomas Bond, of St. Louis, Mo. (Hyman G. Stein, Jerome Duggan, and Carl M. Dubinsky, all of St. Louis, Mo., on the brief), for appellant.

Vance J. Higgs, of St. Louis, Mo. (T. E. Francis, of St. Louis, Mo., on the brief), for appellee.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

STONE, Circuit Judge.

For some years the property of the street railway system in St. Louis was operated by a receiver, appointed in the Eastern District of Missouri. During such operation, and on August 27, 1921, appellant was injured while a passenger upon one of the street cars. He filed his suit in the state court against the receiver for the recovery of such injury and the receiver answered therein. Thereafter, all of the property in receivership was sold and delivered to the purchaser, the appellee here, on December 1, 1927, and the receiver discharged, on May 28, 1928. Within six months after delivery of possession to appellee, as purchaser, appellant presented his claim to appellee, gave notice of his claim, and, from the time appellee took possession, it took over the same claim department organization which had existed under the receiver and in which was the full record and investigation of the claim of appellant.

Thereafter, and on February 20, 1929, a judgment was rendered in the state court in favor of appellant for $2,000; the receiver not appearing, and counsel for this appellee, without entering any appearance for appellee, stating to the court at that time that appellee would not defend.

On March 20, 1929, appellant filed, in the federal court, its petition for leave to file an intervening petition for the purpose of enforcement against appellee of the amount of the above judgment, with interest thereon. The basis of this proceeding in the federal court is that, in the final order of sale and the order confirming the sale to appellee, the court required the purchaser to pay claims incurred in the operation by the receiver, provided for enforcement of the decrees by a power in the court to retake and resell the properties, and retained the necessary jurisdiction. This petition was allowed and a petition in intervention filed. Thereafter, appellee filed its motion to dismiss the petition in intervention upon three grounds: That (1) the face of the petition showed the judgment was rendered after the discharge of the receiver; (2) there was an adequate remedy at law; and (3) laches. This motion was sustained. Thereafter, appellant filed a petition for leave to file an amended petition in intervention. That petition was allowed and an amended petition in intervention was filed. Thereafter, a motion to dismiss this amended petition was filed by appellee upon precisely the same grounds as in the prior motion to dismiss. This motion was sustained, and, appellant declining to plead further, an order was entered dismissing the petition, entering decree in favor of appellee, and according recovery of costs. From this decree the intervener brings this appeal.

There are three very brief oral opinions by the court; the first being upon allowance of the original intervention, the second in connection with sustaining the motion to dismiss the original petition in intervention, and the third in connection with sustaining the motion to dismiss the amended petition in intervention. Unfortunately, these opinions are so brief and indefinite that it is difficult to know what were the grounds for the court's action. From the first of these opinions it appears that the early inclination of the court to permit the original petition to be filed was adverse, but that, out of caution and with the thought that the matter could be "fully and completely threshed out" thereafter, the leave was granted. In that opinion, the only intimations of the view of the court are as fol-

lows: "I am still casually of the opinion that there are other provisions in the decree, which are sufficiently full to provide a remedy of law, but on the casual examination that I have made of the decree I have not found those provisions; however, I am clearly of the opinion (which is bottomed upon my recollection), that there are such provisions. I gravely suspect that counsel for intervener has probably overlooked some required matter of notice; that he has delayed too long, or that he has made no legal efforts to get into court the successors of the Railways Company. By that I mean the old company. * * * I yet am doubtful, as I was in the beginning, and disposed to think that the tentative position first assumed by the Court was the correct one, and that the troubles, I repeat, have arisen from some failure to get the old company into court, so as to require them to answer in the original suit brought by Sheppard [Shepherd] against the old company."

The entire substance of the second opinion is as follows:

"It may well be that there are circumstances under which a bill of this sort, or bills of this sort, could be sustained, but in my opinion the present intervening petitions are lacking in averment, even assuming that the judgments in favor of interveners and against Rolla Wells, former Receiver of defendant Company, are good and valid.

"The two cases called to my attention, namely, the Wabash Railway Company Case, 200 Mo. App. 397, 207 S. W. 78, decided by the Kansas City Court of Appeals, and the Baer Case, 176 N. Y. 97, 68 N. E. 129, decided by the New York Court of Appeals, casually seem to go to the extent of holding that a judgment against a receiver, after he has been, by final order of court, denuded of all the property in his hands, is yet good.

"At this time I am not called upon to decide that question. Taking the entire decree as it stands, I am led to believe that assuming the validity of the judgments against the late Receiver, then interveners, if they have complied with the requirements of the decree, may bring an action at law against the present holder of the properties. I am not deciding this point, but merely suggesting it as a reason why, in my opinion, recourse at this time ought not to be had in the severe and serious way proposed in the interventions. As forecast, I know of but one contingency upon which such an action as here sought could be maintained, and that contingency does not appear in the petition."

The entire substance of the third opinion is as follows: "The Court has heretofore indicated the ground and the only ground, in the opinion of the Court, wherein the Court would be warranted in permitting the maintenance of an intervention such as this, upon the record in this cause. Counsel upon argument frankly conceded that those requirements, which the Court had indicated as necessary, were not fulfilled in the bill of complaint before me. This being the case, I see no reason to change the two former rulings."

Turning to the record, it is clear that appellant bases the right to intervene in the federal court solely upon provisions in the final decree ordering the sale of the properties and in the order of confirmation. The remedy he seeks to invoke is one he conceives to be accorded in those decrees.

The attacks upon this position, as shown in the motion to dismiss, which was sustained, are: (1) That the judgment in the state court is a nullity because rendered only against the receiver and after he had been fully discharged; (2) that there is an adequate remedy at law; and (3) laches.

The issues presented here are as follows: (1) Whether this order is an appealable order; (2) whether the judgment in the state court is subject to attack; (3) if subject to attack, whether the discharge of the receiver abated that action and rendered the judgment void; (4) whether appellant has an adequate remedy at law to which he must be relegated; and (5) whether appellant has been guilty of laches. We find it unnecessary to determine each of these separately.

The first matter requiring settlement is the contention of appellee that this is not an appealable order. There is no force in this position. It is true that where the order appealed from is an order denying leave to intervene, that order is usually, but not always, treated as not a final, appealable order. But here intervention was permitted and the order appealed from disposes, finally, of the merits of that intervention, which is a very different thing.

While the parties argue various matters here, the decree must be affirmed for the following reasons: The sole basis of this intervention is that the judgment in the state court constitutes an established claim which is, under the above decrees in the federal court, enforceable against the purchaser. The sole purpose of the intervention is to procure that enforcement. The motion to dismiss attacks the validity of the judgment on the ground that it was rendered against the receiver only,

and after he had been finally discharged. There are two reasons why the intervention was properly held not to be maintainable.

The first reason is that the judgment in the state court is void. Whether that judgment is void, or not, depends upon state law. Appellant relies upon section 904, Revised Statutes Missouri 1929 (Mo. St. Ann. § 904), as establishing the validity of the judgment. That section is as follows: "Sec. 904. Interest in suit transferred, proceedings.— When an interest is transferred in any action now pending, or hereafter to be brought, other than that occasioned by death, marriage or other disability of a party, the action shall be continued in the name of the original party, if the party to whom the transfer is made will indemnify the party in whose name the suit is to be continued against all costs and damages that may be occasioned thereby, or the court may allow the person to whom the transfer is made to be substituted in the action; and in all such cases the party to whom the transfer is made shall be required by the court, upon application of the party who made the transfer, either to give such indemnity or to cause himself to be substituted in the action, and upon his omission to do so the court shall order the suit to be dismissed." Apparently, this section gives no right to an opposing party to compel either the indemnity or the substitution. In fact, it does not allow the transferor to compel either. The only compulsion is that the suit shall be dismissed unless the transferee does one or the other when "required" so to do on the application of the transferor. It is difficult to see how this section can have any practical application to a defendant since it, obviously, leaves in the power of the transferee complete freedom to enter the suit, or not, as he sees fit, and, just as clearly, it would rarely or never be to the disadvantage of a defendant to have the suit dismissed. But suppose that the section can be construed to include defendants, yet there is no claim here that the action required by the section has been complied with. The transferor here is the receiver, and the transferee, the purchaser. The receiver has clearly taken no steps to have the purchaser either indemnify him or be substituted in his place, and the purchaser has not done either. Therefore, this section is of no avail to appellant.

Appellant relies upon the case of Baer v. McCullough et al., 176 N. Y. 97, 68 N. E. 129, as being authority that section 904 is sufficient. Upon facts very similar to those here involved, that case held that the judgment against the receiver was effective because of section 756 of the New York Code of Civil Procedure. Appellant contends that section 756 of the New York Code is identical in effect with section 904 of the Missouri statutes, and the authority of the Baer Case here depends upon that identity. A comparison of the two sections shows that they are entirely different in respect to the matters here involved and, therefore, that case has no significance.

There is a line of cases holding that where property in receivership is not sold, but is returned to the owner, the suit does not abate, although the receiver be discharged. An illustration of this class of cases is Texas & Pacific Ry. v. Johnson, 151 U. S. 81, 14 S. Ct. 250, 38 L. Ed. 81. But there is no case, with the possible exception of one in Colorado (Denver & R. G. R. Co. v. Gunning, 33 Colo. 280, 80 P. 727), which holds that a judgment secured after the discharge of a receiver and without substitution of the purchaser is valid against the purchaser. This difference is expressly recognized in Texas & Pacific Ry. Co. v. Bloom's Administrator, 164 U. S. 636, at page 639, 17 S. Ct. 216, 217, 41 L. Ed. 580, where the court states:

"The first contention on behalf of the plaintiff in error is that, as whatever claim plaintiff acquired by reason of her injury was one not against the defendant company, but against the receiver operating the road at the time under the orders of the court appointing him, and as it was within the power of such court, on terminating the receivership, to make and provide for settlement of all claims of parties against such receiver growing out of his operation of the road, and as, in the present instance, by its order, the circuit court had made such provision by directing that all claims against the receiver should be presented and prosecuted by intervention prior to February 1, 1889, and that, if not so presented by that date, the same be barred, and shall not be a charge on the property of said company; and that, as the plaintiff did not so present or prosecute her claim, she was thereby precluded from maintaining an action against the company.

"Undoubtedly, if this were a controversy between a party whose claim originated while a railroad was in the control of a receiver appointed during a foreclosure suit, and a purchaser at a judicial sale decreed under that proceeding, the plaintiff's proposition would be a sound one. If the property sequestrated had gone to sale, and a fund had been thus realized for distribution, then, upon notice

appropriate to proceedings in rem, such a claimant would, in the absence of special and unusual circumstances, have been bound by the disposition so made.

"But the present case is one in which no judicial sale was made, and no fund realized for distribution by final decree after notice to and a hearing of those having claims against the fund. It was not the ordinary case of a sale and purchase in which compliance with stipulated conditions forms part of the consideration, and in which the extent of the burdens assumed is defined."

And the same doctrine is announced in Stuart v. Dickinson, 290 Mo. 516, 235 S. W. 446. In that case an action was brought against a company in receivership and the receiver. Prior to the trial, the property was turned back to the company and the receiver discharged. The judgment was against both the receiver and the company. The court upheld the judgment as to the company on the authority of the Bloom Case, supra; but as to the receiver, its holding (page 551 of 290 Mo., 235 S. W. 446, 457) was as follows: "The receiver's demurrer to the evidence should have been sustained. 'It is well-settled law that suits against a receiver are in effect only against the receivership; he being regarded as in the nature of a corporation sole. Such suits are against the funds in his hands. His contracts, misfeasances and negligence (apart from personal misconduct or personal negligence) are official, not personal, judgments against him, are payable only from the property or money in his hands, and his discharge as receiver absolutely puts an end to his liability.' Smith v. Lumber Co. (D. C.) supra, 200 F. loc. cit. 650, and cases cited. Respondent suggests that the continuance of the receiver as a party defendant, notwithstanding his discharge, is proper because the effect and validity of the judgment rendered by the District Court in his favor and against plaintiff is at issue. If this were a direct action to set aside that judgment the position might be tenable, but in this proceeding the judgment can be just as effectually interposed as a defense by the railway company on the one hand and its validity assailed by the plaintiff on the other without as with the receiver being a party."

Therefore, because section 904 of the Missouri statutes does not protect this judgment, and because the common law, as construed both by the Supreme Court of the United States, in the Bloom Case, and by the Supreme Court of Missouri, in the Stuart Case, declared that a judgment against a dis-charged receiver, where the receivership estate has been sold, is invalid, this judgment must be regarded as entirely void.

The second reason why the action of the trial court was correct is that no legal relationship or liability exists between a purchaser of property in receivership and this claimant requiring the former to pay a judgment establishing (after sale of the property in a state court) a claim against the receiver. Any liability of such purchaser must be found in the terms of the purchase contract. The terms of the contract of purchase here involved are to be found in the decree authorizing the sale, the conveyance, the order confirming the sale, and the acceptance of the purchaser here. Portions of the final order of sale under which appellee purchased are set forth in the "Amended Intervening Petition." Therefrom, it appears that the purchaser is required to pay, *as part of the purchase price*, "injury and damage claims against * * * the Receiver incurred in the management and operation of the properties purchased"; that "the holder of any claim against the Receiver shall present the same for payment to the purchaser, within six months after the purchaser of said property is placed in possession thereof, or else be forever barred"; that if the purchaser refuse, after demand, to pay any claim covered in the order, the claimant "upon twenty days' notice in writing to such purchaser, may file a petition in this Court in this consolidated cause to have such claim enforced against the property sold to such purchaser in accordance with the usual practice of this Court in relation to payments of a similar character; and such purchaser shall have the right to appear and make defense to any claim or demand so sought to be enforced"; that ample jurisdiction was expressly retained to enforce compliance with the order, including retaking and reselling of the property in case the purchaser "fail to comply with any order of this Court directing payment of such purchase price or any part thereof." Other allegations in the "Amended Intervening Petition" reveal entire harmony of the conveyance, of the acceptance filed by appellee, and of the order confirming sale with the above provisions of the final order.

From all this, it is clear that appellee assumed obligations of the character here involved; that such assumption was under and only under the conditions set forth and that the final order defined those conditions. Those conditions were: First, that the claim should be demanded of appellee within six

months of its taking possession of the property; second, that, if payment was refused on such demand, the claimant might, after giving appellee twenty days' written notice, file a petition in the consolidated cause to enforce such claim; third, that appellee might defend against such petition; fourth, that the court would determine such claim; fifth, that, if payment was ordered 'and not made (within a stated time), the court would enforce such claim as for nonpayment of a part of the purchase price.

Such provisions are part of the purchase agreement and define the rights, liabilities, and remedies of the purchaser and of the claimant. As said in Wabash R. Co. v. Adelbert College, 208 U. S. 38, 53, 28 S. Ct. 182, 187, 52 L. Ed. 379: "The effect of the decree is to say to any purchaser under it, you must take this property subject to all claims which this court shall hereafter adjudge to be lawful, and you may be assured that you will be held to pay none other, and for the purpose of making this statement good the court reserves jurisdiction over the property and claims in respect to it, and the right to take it again into possession and exercise again the power of sale."

In Lang v. Choctaw, Okla. & Gulf R. Co., 160 F. 355, 364, Judge Sanborn, for this court, said: "That decree and the accepted bid constituted a contract of sale between the court and the purchaser. They also became a contract of sale between the parties to the suit, including the defendants, and the purchaser, because in the sale the court was the agent and representative of those parties, and it sold the property for them. One of the terms of that contract was that the purchaser in addition to his bid should pay such claims filed in that cause as the court should adjudge to be prior in lien to the mortgage and that the court reserved to itself exclusive jurisdiction to determine what claims were so prior in lien. The federal court which was then in the exclusive custody of the property had the undoubted right to retain exclusive jurisdiction to determine this question. That it effectually made this reservation is demonstrated by the fact that it did so in the very terms which the Supreme Court held sufficient to accomplish that purpose in Julian v. Central Trust Company, 193 U. S. 110, 24 S. Ct. 399, 48 L. Ed. 629. The agreement of the court that it reserved to itself and would exercise exclusive jurisdiction to determine the priority of the claimed liens which the purchaser promised to pay was one of the material terms of the contract of sale. One might be willing to pay a certain price for a railroad in addition to the claims against it which a specified court should adjudge prior in lien to the mortgage when he would hesitate long to pay that price or to purchase at all subject to claims which unknown tribunals might thus adjudge. Courts should not be less solicitous than private parties to strictly comply with the terms of their agreements, and the contract of sale in this case required the court below to exercise the exclusive jurisdiction which it reserved and to prevent any other court or party from imposing upon the property which it had sold any lien or charge on account of any claim filed in the foreclosure cause which had not been adjudged by the court which conducted that suit to be prior in lien to the mortgage."

That the provisions of this decree are entirely proper is fully settled. Cincinnati, etc., Ry. Co. v. Indianapolis Union Ry. Co., 270 U. S. 107, 46 S. Ct. 221, 70 L. Ed. 490; Central Union Trust Co. v. Anderson County, Texas, 268 U. S. 93, 45 S. Ct. 427, 69 L. Ed. 862; Wabash R. Co. v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; Julian v. Central Trust Co., 193 U. S. 93, 24 S. Ct. 399, 48 L. Ed. 629; St. Louis-San Francisco R. Co. v. Byrnes, 24 F.(2d) 66 (C. C. A. 8); Smith v. Mo. Pac. R. Co., 266 F. 653 (C. C. A. 8); Lang v. Choctaw, Okla. & Gulf R. Co., 160 F. 355 (C. C. A. 8).

That they govern those not parties to the action is settled. Central Union Trust Co. v. Anderson County, Texas, 268 U. S. 93, 45 S. Ct. 427, 69 L. Ed. 862; Wabash R. Co. v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; Julian v. Central Trust Co., 193 U. S. 93, 24 S. Ct. 399, 48 L. Ed. 629; St. Louis-San Francisco R. Co. v. Byrnes, 24 F.(2d) 66 (C. C. A. 8); Smith v. Mo. Pac. R. Co., 266 F. 653 (C. C. A. 8).

From the above, it is clear that no provision in the contract of purchase can be construed as authorizing or permitting the establishment of claims, the payment of which was assumed by the purchaser, to be anywhere except in the court conducting the receivership. The appellant is not asking that court to establish the validity and amount of his claim, but is asking the court to accept the judgment of the state court as an establishment of the claim and to enforce it. In so doing, he has not brought himself within the terms upon which the purchaser assumed responsibility. Therefore, even if the judgment in the state court were entirely valid, it could be the basis of no enforceable obligation against the purchaser under the reservation of jurisdiction in the federal court.

There is no basis for appellee's contention that the amended intervening petition should have been dismissed for laches. The petition alleges facts (admitted by the motion to dismiss) showing presentation of the claim to the appellee within six months of its possession of the property; notice to and knowledge of appellee of the then pendency of the suit in the state court on the claim; prompt securing of the judgment in the state court; prompt presentation of the judgment, for enforcement, to the federal court. No prejudice to appellee from such procedure appears. As said by Mr. Justice Brandeis, in Southern Pac. Co. v. Bogert, 250 U. S. 483, 490, 39 S. Ct. 533, 536, 63 L. Ed. 1099: "Nor does failure, long continued, to discover the appropriate remedy, though well known, establish laches where there has been due diligence, and, as the lower courts have here found, the defendant was not prejudiced by the delay."

The decree is affirmed, without prejudice to appellant to proceed in any manner according with the law and the situation.